UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

DR. GERALD FINKEL, as Chairman of the Joint
Industry Board of the Electrical Industry,

                         Plaintiff,

- against -

SMALLS ELECTRICAL CONSTRUCTION, INC.
and JEFFREY SMALLS,

                        Defendants.

------------------------------------------------------------ x

FILED
CLERK
2012 APR -3 AM 10: 19
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

Civil Action No.
SUMMONS ISSUED
CV 12-1610
COMPLAINT

BLOCK, J.
GOLD, M.J.

       Plaintiff Dr. Gerald Finkel, as Chairman of the Joint Industry Board of the Electrical Industry (the "Joint Board"), for his complaint alleges as follows:

### INTRODUCTION

      1.     This is an action by a fiduciary of various employee benefit plans against defendants Smalls Electrical Construction, Inc. (the "Company") and Jeffrey Smalls ("Smalls," together with the Company referred to as the "Defendants") for relief pursuant to Sections 404, 409, 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1104, 1109, 1132 and 1145, and to collect various other sums due to the Joint Board in accordance with the terms of a collective bargaining agreement pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185.

### JURISDICTION AND VENUE

      2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, Sections 502(a)(2) and (3), 502(f) and 515 of ERISA, 29 U.S.C. §§1132(a)(2) and (3), 1132(f)

and 1145, and Section 301(a) of the LMRA, 29 U.S.C. §185(a). The Court also has supplemental jurisdiction under 28 U.S.C. §1367(a).

3. Venue lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. §185(a), as the Joint Board maintains its principal office in this district and the various employee benefit plans are administered and maintain their principal offices in this district.

## THE PARTIES

4. The plaintiff is the Chairman of the Joint Board, the administrator of various employee benefit plans established and maintained pursuant to collective bargaining agreements between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"), and employer associations and independent or unaffiliated employers in the electrical, elevator, sign, television, burglar alarm and other related industries. The Joint Board maintains its principal place of business at 158-11 Harry Van Arsdale Jr. Avenue, Flushing, New York 11365.

5. The Joint Board is the administrator and fiduciary within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§1002(16)(A)(i) and 1002(21)(A), of each of the following employee benefit plans: the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, the Vacation-Holiday Unemployment Plan of the Electrical Industry, the Health Reimbursement Account Plan of the Electrical Industry, and also collects contributions required to be paid to the National Employees Benefit Fund (collectively, the "ERISA Plans"). Each of the ERISA Plans is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. §1002(3), and a multiemployer plan within the

meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37). Each of the ERISA Plans is also jointly administered by a Board of Trustees, comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5).

6. The Deferred Salary Plan of the Electrical Industry (the "DSP") is a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of section 401(k) of the Internal Revenue Code (the "Code"). Pursuant to the collective bargaining agreements, employers are required to deduct a specified percentage from the weekly wages of each eligible employee covered by the collective bargaining agreement and to remit such amounts plus additional salary deferrals made at the election of the employee (together, "Employee Contributions"), to the DSP, along with related payroll reports. The Employee Contributions are employee elective contributions, which, but for the salary deferrals, would have been paid to the employees as wages. Employers are also required to remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"), in addition to the Employee Contributions and without regard to any election by the employees. The Employee Contributions and the Employer Contributions to the DSP are collectively referred to hereafter as "DSP Contributions." Employers are required to send all DSP Contributions and related payroll data to the DSP in care of Mercer Trust Company ("Mercer"), the third-party record-keeper and investment manager retained by the DSP for such purposes. All DSP Contributions are allocated to individual bookkeeping accounts in the name of the covered employees, who are entitled to direct the investment of their DSP Contributions from among various investment alternatives selected by the Trustees of the DSP.

7. In addition, the Joint Board collects assessments from certain employees covered by the collective bargaining agreements who authorize their employers to deduct from their wages union dues and employee loan repayments due to the Union ("Union Amounts"), and employee loan repayments due to one or more of the above-referenced ERISA Plans. The Joint Board also collects, in accordance with the collective bargaining agreements, contributions due to the following non-ERISA plans: the Electrical Employers Self Insurance Safety Plan, Benefit and Wage Delinquency Fund, and COPE Fund, and contributions to fund the operations of the Joint Board (collectively, the "Non-ERISA Plans"). Together, the Union Amounts and the amounts owed to the Non-ERISA Plans are referred to as the "Non-ERISA Contributions." The contributions to the ERISA Plans, except the DSP, and the Non-ERISA Contributions are collectively referred to as the "JIB Contributions." The JIB Contributions with the DSP Contributions together are referred to hereafter as the "Required Contributions."

8. The Joint Board is the Administrator of all of the ERISA Plans and the Non-ERISA Plans (collectively, the "Plans"). Under the collective bargaining agreements, signatory employers, including the Company, are required to remit the Required Contributions, as well as summaries of their payroll records.

9. The Joint Board and each of the Plans are third-party beneficiaries of the collective bargaining agreements.

10. Upon information and belief, the Company is, and at all times relevant to this action has been, a New York corporation with its principal facility located at 63 Flushing Avenue, Brooklyn, New York 11205. Upon information and belief, at all times relevant to this action, the Company was engaged in the electrical contracting business within the metropolitan New York area. The Company is, and at all times relevant to this action, has been, an

"employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5) and Section 301(a) of the LMRA, 29 U.S.C. §185(a).

11. Smalls is the principal of the Company and by acting directly or indirectly in the interest of any employer constituting an "employer" as defined by Section 3(5) of ERISA, 29 U.S.C. §1002(5) and Section 301(a) of the LMRA, 29 U.S.C. §185(a) is personally liable for unpaid contributions.

## FACTUAL BASIS FOR CLAIMS

### The Collective Bargaining Agreements and the Obligation to Remit Contributions

12. The Company is a member of the New York Electrical Contractors Association, Inc. (the "NYECA"). Members of the NYECA, including the Company, designated the NYECA as their bargaining representative and authorized the NYECA to negotiate the collective bargaining agreement on their behalf.

13. The Company agreed to be bound to the terms of collective bargaining agreements between the NYECA and the Association of Electrical Contractors, Inc. (collectively, the "Associations") and the Union.

14. The Union and the Associations are bound to the terms of a series of collective bargaining agreements, most recently covering the period May 12, 2010 to May 8, 2013 (the "CBA").

15. Pursuant to the CBA, the Company is obligated to remit the Required Contributions at the rates set forth in the CBA for any employee performing work covered by the CBA.

16. Along with the weekly JIB Contributions, the Company is required to submit payroll reports ("Payroll Reports") to the Joint Board that provide the name, gross wages,

and hours worked for each worker employed by the Company on whose behalf JIB Contributions are made.

17. Along with the weekly DSP Contributions, the Company is required to submit reports to Mercer that set forth the amounts of Employee Contributions and Employer Contributions and loan repayments being deducted from employee wages and remitted to Mercer. These reports are referred to as hereafter the "DSP Summaries."

18. Pursuant to the CBA, each week ends on a Wednesday, and the Payroll Reports, DSP Summaries, and Required Contributions are due the following Tuesday.

19. The CBA and the Trust Agreements establishing each of the Plans are agreements between the Union and various employers and employer associations within the meaning of Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§1132(a)(3) and 1145, and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185(a). In addition, the CBA and the Trust Agreements of the ERISA Plans are plan documents within the meaning of Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§1132(a)(3) and 1145.

20. As Administrator of the ERISA Plans, the Joint Board has adopted a delinquent contribution policy calling for the assessment of interest on late-paid contributions due and owing to the ERISA Plans, at the rate established by the ERISA Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621.

21. The Joint Board has also adopted a delinquent contribution policy calling for the assessment of interest on late-paid Non-ERISA Contributions, at the rate established by the Non-ERISA Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621.

**Defendants' Failure to Remit Required Contributions**

**A.     The Stipulation**

22.     On or about January 17, 2012, the Company and Jeffrey Smalls entered in the Stipulation and Forbearance Agreement (the "Stipulation") under which they acknowledged that the Defendants jointly and severally owed Required Contributions to the Joint Board in the amount of $315,590.45, which represents JIB Contributions and DSP Contributions for the weeks ending November 9, 2011 through December 7, 2011.

23.     The parties agreed that the Stipulation constitutes an agreement within the meaning of Section 515 of ERISA, 29 U.S.C. §1145.

24.     By consent, the Defendants agreed to submit to the jurisdiction of this Court.

25.     Pursuant to the Stipulation, the Defendants were to make an initial payment of $15,000 on January 18, 2012 and subsequent weekly payments continuing thereafter until the balance was paid in full.

26.     Pursuant to the Stipulation, the Defendants further agreed to make all required ongoing weekly contribution payments to the Joint Board when and as they become due, and that a failure to make such payments would constitute a default under the Stipulation.

27.     Smalls signed the Stipulation twice: first in his capacity as the principal of the Company, and second in his individual capacity.

28.     Smalls personally signed the Stipulation and agreed to be personally liable for the amounts due in consideration for and as an inducement to the Joint Board to enter into the Stipulation.

29.     The Stipulation provides that, in the event of a default by the Defendants, which is not cured within five calendar days after receipt of written notice, the Joint Board shall

be entitled to commence an action against the Defendants in this Court for breach of the Stipulation in order to collect the full amount of indebtedness, plus interest, attorneys' fees and costs, less any payments made by the Defendants.

30. In consideration and as an inducement to the Joint Board to enter into the Stipulation, the Defendants executed an Affidavit for Judgment by Confession to be entered against them in the event of a breach of the Stipulation.

31. The Defendants failed to remit the installment payments in accordance with the payment as due under the Stipulation, commencing on February 15, 2012.

32. The Defendants failed to remit their ongoing weekly Required Contributions to the Joint Board within fifteen business days after the end of the payroll week, as required by the Stipulation.

33. By letter dated March 6, 2012, the Joint Board advised the Defendants of their default under the Stipulation.

34. The Defendants failed to cure the default within five calendar days, as required by the Stipulation.

35. As of the date of this complaint, the Defendants remain in default in that they have failed to remit the weekly installment payments due under the Stipulation, and have failed to remain current in their weekly Required Contributions to the Joint Board.

**B.  Unpaid Contributions**

36. Upon information and belief, for all relevant periods, including for the period of weeks ending February 1, 2012 through March 28, 2012, the Company employed employees who performed work covered by the CBA.

37. The Company has submitted Payroll Reports that reflect the amount of JIB Contributions due and owing for the weeks ending February 1, 2012 through March 14, 2012. To date, the Company has failed to remit the JIB Contributions for said period.

38. The Joint Board is unable to determine the exact amount of JIB Contributions owed for the weeks ending March 21, 2012 through March 28, 2012, because the Company has failed to submit to the Joint Board the required Payroll Reports upon which calculations of the amount of the JIB Contributions are based. To date, the Company has failed to remit the JIB Contributions for said period.

39. The Company has submitted a DSP Summary to Mercer that reflect the amount of DSP Contributions due and owing for the week ending February 1, 2012. Upon information and belief, the DSP Contributions have not been segregated from the Company's general assets. To date, the Company has failed to remit the DSP Contributions for said period.

40. The Joint Board is unable to determine the exact amount of required DSP Contributions owed for the weeks ending February 8, 2012 through March 28, 2012 because the Company has failed to submit to Mercer the DSP Summaries upon which calculations of the amount of DSP Contributions owed are based. To date, the Company has failed to remit the DSP Contributions for said period.

41. The Company remains obligated to pay the Required Contributions to all Plans due under the CBA and any successor CBA to which it becomes a party that will accrue between the date this Complaint is filed and the date judgment is entered.

42. The Company is obligated to remain current on payment of weekly contributions pursuant to paragraph six of the Stipulation.

43. The Company is nine weeks delinquent on the payment of JIB Contributions and nine weeks delinquent on the payment of DSP Contributions, and therefore is in breach of the Stipulation.

### C. The Dishonored Checks

44. By the check in the amount of $31,974.31, check number 9406, the Company remitted JIB Contributions to the Joint Board. Through check number 9406, the Company sought to remit payment for contributions due for week ending January 11, 2012. This check was returned to the Joint Board by its bank for insufficient funds.

45. To date, the Company has failed and refused to replace check number 9406 in the amount of $31,974.31.

46. By the check in the amount of $15,000, check number 9389, the Company remitted a Stipulation payment to the Joint Board. This check was returned to the Joint Board by its bank for insufficient funds.

47. To date, the Company has failed and refused to replace check number 9389 in the amount of $15,000.

48. By the check in the amount of $15,000, check number 9407, the Company remitted a Stipulation payment to the Joint Board. This check was returned to the Joint Board by its bank for insufficient funds.

49. To date, the Company has failed and refused to replace check number 9407 in the amount of $15,000.

50. By the check in the amount of $15,000, check number 9425, the Company remitted a Stipulation payment to the Joint Board. This check was returned to the Joint Board by its bank for insufficient funds.

51. To date, the Company has failed and refused to replace check number 9425 in the amount of $15,000.

### D. Interest on JIB Contributions Paid Late

52. The Company paid the JIB Contributions late for the weeks ending August 17, 2011 through October 12, 2011. Consequently, the Company owes interest on those late-paid JIB Contributions.

53. By letter dated February 22, 2012, the Joint Board provided the Company with a detailed statement reflecting the late-paid JIB Contributions and demanded payment of $2,808.31 in interest on the late-paid JIB Contributions for the weeks set forth above. To date, the Company has failed and refused to remit the interest payment.

54. The Joint Board calculates and demands interest on late-paid JIB Contributions on a quarterly basis. Upon information and belief, the Company has paid JIB Contributions after they were due for additional weeks beyond those referenced in the February 22, 2012 letter. Consequently, the Company owes interest on all such late-paid JIB Contributions.

### E. Other Amounts

55. Upon information and belief, additional amounts will continue to become due and owing during the pendency of this action.

### FIRST CAUSE OF ACTION

56. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

57. Section 515 of ERISA, 29 U.S.C. §1145, requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with

11

law make such contributions in accordance with the terms and conditions of such plan or such agreement."

    58. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that

> In any action brought by a fiduciary on behalf of a plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan,
> (a) the unpaid contributions,
> (b) interest on the unpaid contributions,
> (c) an amount equal to the greater of
>  (i) the interest on the unpaid contributions or;
>  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the [unpaid contributions],
> (d) reasonable attorney's fees and costs of the action, and
> (e) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of title 26.

    59. The Company's failure to remit amounts due under the Stipulation and contributions to the ERISA Plans and failure to submit the weekly Payroll Reports constitute a failure to make contributions in accordance with the terms of the plan documents of the ERISA Plans and a violation of Section 515 of ERISA, 29 U.S.C. §1145, thereby giving rise to an action against the Defendants pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

## SECOND CAUSE OF ACTION

    60. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

    61. By failing to timely remit the Employee Contributions to the DSP and allowing those DSP assets to be retained in, and commingled with, the Company's general assets, the Defendants: (a) violated their fiduciary duty to ensure that plan assets of the DSP were held in trust by one or more trustees pursuant to the provisions of Section 403(a) of ERISA, 29

U.S.C. §1103(a); and (b) permitted plan assets of the DSP to inure to the Company's and/or Smalls' benefit, in violation of Section 403(c)(1) of ERISA, 29 U.S.C. §1103(c)(1).

62. As a direct and proximate result of the Defendants' actions or omissions, the DSP has suffered losses for which the Defendants are liable, pursuant to Section 409 of ERISA, 29 U.S.C. §1109.

## THIRD CAUSE OF ACTION

63. Plaintiff repeats and realleges the allegations set forth the preceding paragraphs.

64. By failing to timely remit the Employee Contributions to the DSP and by causing those plan assets of the DSP to be retained in and commingled with the Company's general assets, the Defendants, acting in their fiduciary capacity: (a) engaged in prohibited transactions; (b) failed to discharge their duties with respect to the DSP solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the DSP, as required by Section 404(a)(1)(A) of ERISA, 29 U.S.C. §1104(A)(1)(a); and (c) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, as required by Section 404(a)(1)(B) of ERISA, 29 U.S.C. §1104(a)(1)(B).

65. As a direct and proximate result of the Defendants' repeated failures to discharge their fiduciary duties properly, the DSP and the participants and beneficiaries have suffered losses for which the Company is liable, pursuant to Section 409 of ERISA, 29 U.S.C. §1109.

## FOURTH CAUSE OF ACTION

66. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

67. The Defendants' failure to remit the Required Contributions in accordance with the CBA is a breach of the CBA, thereby giving rise to an action against the Defendants pursuant to Section 301(a) of the LMRA, 29 U.S.C. §185(a).

## FIFTH CAUSE OF ACTION

68. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

69. As a result of the Company's failure to make the payments to the Joint Board as required under the Stipulation, Smalls is personally liable for such obligations, thereby giving rise to an action to enforce the Stipulation under common law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court enter judgment against the Defendants as follows:

A. Ordering the Defendants to submit Payroll Reports and DSP Summaries for any weeks for which such reports have not been submitted as of the date judgment is entered; and

B. Ordering the Defendants to pay amounts due pursuant to the Stipulation; and

C. Ordering the Defendants to remit the Required Contributions determined by the Court to be due and owing; and

D. Ordering the Defendants to pay interest on the amount of Required Contributions found to be due and owing in paragraph B above, calculated through the date that

judgment is entered at the rate established by the individual Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621; and

  E. Ordering the Defendants to pay interest on any late-paid Required Contributions paid prior to the filing of the Complaint, and such further interest as may accrue on that amount calculated at the rate established by the individual Plans or in accordance with Section 6621 of the Code, 26 U.S.C. §6621 through the date payment of said interest amount is received or the date judgment is entered; and

  F. Ordering the Defendants to pay interest on any late-paid Required Contributions paid after the filing of the Complaint, and such further interest as may accrue on that amount through the date payment of said interest amount is received or the date judgment is entered; and

    G. Ordering the Defendants to pay an amount equal to the greater of:

      i. the amount due under paragraphs C and E with respect to the ERISA Plans; or

      ii. liquidated damages equal to 20% of the contributions used to calculate the amount due under paragraphs C and E with respect to the ERISA Plans; and

    H. Ordering the Defendants to pay reasonable attorney's fees and costs of the action;

I.  Ordering such other legal or equitable relief as the Court deems appropriate.

Dated: April 2, 2012
       New York, New York

By: _____
Michael S. Adler
COHEN, WEISS and SIMON LLP
330 West 42nd Street
New York, New York 10036
(212) 563-4100

Attorneys for Plaintiff